IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

DAVID HANCOCK,                          )
                                        )
      Plaintiff,                        )
                                        )
v.                                      )     CIVIL ACTION NO. 09-00026-KD-N
                                        )
JAMES HOOD, et al.,                     )
                                        )
      Defendants.                       )

**REPORT AND RECOMMENDATION**

This action is before the Court on three separate motions filed by the defendants:

(1) a motion to dismiss or, in the alternative, to transfer for improper venue (doc. 34) filed

by Dr. Brian S. Claytor; (2) a motion to dismiss or, in the alternative, for summary

judgment (doc. 39) filed by Perry County Sheriff James Hood; and (3) a motion to

dismiss or, in the alternative, for summary judgment (docs. 60-61) filed by Tommy

Buford, Assistant Warden of the Perry County Detention Center.[1]  These matters have

been referred to the undersigned for appropriate action pursuant to 28 U.S.C. §

636(b)(1)(A).  Upon consideration of the motion and all pertinent portions of the record,

and there being no opposition by the plaintiff, it is recommended that the three motions to

dismiss be **granted** and that Dr. Claytor's motion to transfer be **denied**.

I.    <u>Procedural Background.</u>

---

[1]Although Plaintiff has identified Tommy Buford as "the Assistant Warden of the Perry
County Detention Center, a private prison," Buford contends that he merely served as "the Chief
of Security" for that institution at the "time of Plaintiff's off-site medical treatment."  Buford's
Opposition Brief (doc. 61) at 3.  According to Buford, he was not promoted to the position of
Deputy Warden until June 25, 2007.  *Id.*

A.    Plaintiff's Complaint(s).

Plaintiff David Hancock filed his original complaint on January 16, 2009 (doc. 2) pursuant to 42 U.S.C. § 1983  and asserted various claims against four defendants: (1) James Hood, the Sheriff of Perry County, Alabama, in his individual capacity; (2) Tommy Buford, Assistant Warden of the Perry County Detention Center; (3) LCS, Inc., the alleged owner of the Perry County Detention Center; and (4) Brian S. Claytor, M.D., a surgeon who operated upon the plaintiff.  Plaintiff entitles his claims as Assault and Battery (Count One), Assault and Battery Under State Law (Count Two), Unreasonable Seizure (Count Three), Conspiracy to Deprive Civil Rights (Count Four),  and Violation of Alabama Medical Liabilities Act (Count Five).

On May 11, 2009, Plaintiff filed an Amended Complaint (doc. 11), which was stricken by the Court by Order dated June 5, 2009 for failure to contain a certificate of service (doc. 15).  On June 8, 2009, Plaintiff filed a document entitled "Third Amended Complaint" (doc. 17) in which the corporate status of LCS was changed from "Inc." to "LLC".

On June 10, Plaintiff filed a motion (doc. 20) purporting to seek leave "to amend his Second Amended Complaint to correct a misnomer naming LCS, Inc. instead of LCS, LLC and adding all documents sent to defendant Hood to comply with the Prison Litigation Reform Act (42 U.S.C. 1997c)."  Simultaneously, Plaintiff filed a document entitled "Third Amended Complaint" (doc. 21) which is identical to the document filed on June 8, 2009 (doc. 17) except with respect to the certificate of service and certain

papers attached to the later document evidencing a claim by Plaintiff to the Alabama Board of Adjustment. However, by Order dated June 12, 2009 (doc. 24), the Court struck both the motion to amend (doc. 20) and the proposed third amended complaint (doc. 21) for failure to comply with the Court's rules regarding filing, signing and verifying documents. Plaintiff filed another motion to amend on June 25, 2009 (doc. 27). This motion was denied by Order dated July 2, 2009 (doc. 31) because the attached papers relating to Plaintiff's administrative claim were then irrelevant and the proposed amended complaint was otherwise identical to the one filed on June 8, 2009 (doc.17).

While the Court was sorting out Plaintiff's various motions to amend and amended complaints, Defendant Tommy Buford filed, on June 24, 2009, a motion for a thirty day extension of time to file a responsive pleading (doc. 26) which was granted in the same Order of July 2, 2009 wherein the Court denied Plaintiff's last motion to amend (doc. 31). On July 9, 2009, Defendant Hood filed a motion (doc. 32) for a clarification about which complaint required a response and asked as well for a thirty day extension of time within which to respond. By Order dated July 10, 2009 (doc. 33), Sheriff Hood was advised to respond to the Third Amended Complaint filed on June 8, 2009 (doc. 17) and to do so by August 10, 2009.

On August 21, 2009, defendant LCS, LLC was dismissed by the Court without prejudice. (Doc. 43). Thus only three defendants remain in this litigation, Dr. Brian S. Claytor, Sheriff James Hood and Tommy Buford.

       B.    <u>Motions to Dismiss</u>.

3

1. Dr. Brian S. Claytor

Dr. Claytor filed his motion to dismiss or, in the alternative, to transfer for improper venue (doc. 34) on July 10, 2009. The Court entered an order on July 13, 2009 (doc. 35) allowing any response in opposition to be filed by July 27, 2009. The only response filed by that deadline was an opposition (doc. 38) from Tommy Buford, a co-defendant, to Dr. Claytor's alternative motion for transfer of the action to the United States District Court for the Northern District of Alabama. Dr. Claytor filed a reply to Buford's opposition (doc. 41) on August 4, 2009.

On September 28, 2009, well over two months past the original response deadline, Plaintiff's counsel requested (doc. 55) leave to respond to Dr. Claytor's motion "no later than October 2, 2009". Over Dr. Claytor's objection (doc. 57), the Court granted plaintiff's request (doc. 58) and permitted a response by October 2, 2009. Plaintiff has neither responded nor sought additional time within which to do so. The Court must, therefore, treat Dr. Claytor's motion as unopposed. On October 16, 2009, Dr. Claytor filed a motion (doc. 59) for the Court to enter an order granting his motion to dismiss for lack of objection by the plaintiff.

2. Sheriff James Hood

Sheriff Hood filed his motion to dismiss or, in the alternative, for summary judgment (doc. 39) on August 4, 2009. The Court entered an order on August 18, 2009 (doc. 42) allowing any response in opposition to be filed by September 4, 2009. On September 3, 2009, plaintiff filed a motion (doc. 48) for an unspecified extension of time

to respond to Sheriff Hood's motion and the Court granted the motion on September 4, 2009 (doc. 52) by resetting the response deadline to September 21, 2009.[2]

On September 4, 2009, Tommy Buford filed his own motion (doc. 49) for an extension of time to respond to Sheriff Hood's motion[3] which was granted on September 8, 2009 (doc. 53). The only opposition to Sheriff Hood's motion was filed by Co-Defendant Tommy Buford on September 21, 2009 (doc. 54). Plaintiff did not file any response to Sheriff Hood's motion by the September 21st deadline.

On September 28, 2009, Plaintiff's counsel requested (doc. 55) leave to respond "out of time" to Sheriff Hood's by "no later than October 2, 2009." Over Sheriff Hood's objection (doc. 56), the Court granted plaintiff's request and permitted a response by October 2, 2009 (doc. 58). To date, Plaintiff has neither responded to the motion nor has he sought any further extensions of time within which to do so. The Court must, therefore, treat Sheriff Hood's motion as unopposed by the Plaintiff.

---

[2]The Court's Order on September 4, 2009 (doc. 52) allowed the Plaintiff an extension of time to September 21, 2009 solely to respond to Sheriff Hood's motion to dismiss despite the fact that Plaintiff specifically requested an enlargement of time to respond "to the Motions to Dismiss or Motion to Dismiss or in the Alternative Motion for Summary Judgment filed by defendants Brian S. Claytor, Tommy Buford and James Hood." The Court now realizes that it restricted the extension of time given in this matter inadvertently but speculates that it was because Plaintiff's motion was filed one day before the deadline to respond to Sheriff Hood's motion, no motion to dismiss had been filed by Tommy Buford at that time, and Plaintiff's motion was filed nearly a month after the expiration of the deadline to respond to Dr. Claytor's motion.

[3]Tommy Buford's motion for additional time was filed by his new counsel who first appeared in the case on September 2, 2009 and had just become aware of Sheriff Hood's pending motion. Although counsel only requested a deadline of September 11th, the Court set a deadline of September 21st.

3.    <u>Assistant Warden Tommy Buford</u>.

Tommy Buford filed his motion to dismiss or, in the alternative, for summary judgment (docs. 60-61) on November 10, 2009. The Court entered an order on November 18, 2009 (doc. 62) allowing any response in opposition to be filed by November 30, 2009. Plaintiff has neither responded nor sought additional time within which to do so.  The Court must, therefore, also treat Tommy Buford's motion as unopposed.  On December 11, 2009, Tommy Buford  filed a reply to plaintiff's lack of opposition (doc. 63).

II.    <u>Findings of Fact and Conclusions of Law</u>.

A.    <u>Undisputed Facts</u>.

Upon consideration of the Plaintiff's Third Amended Complaint (doc. 17), Dr. Claytor's unopposed motion to dismiss (doc. 34), Sheriff Hood's unopposed motion to dismiss (docs. 39-40), Tommy Buford's unopposed motion to dismiss (docs. 60-61), and all other pertinent portions of the record, the Undersigned finds the following facts to be undisputed by the Plaintiff:

1.    The plaintiff, David Hancock ("Hancock"), is presently an inmate at Limestone Correctional Facility serving an eighteen year sentence for manslaughter. (Third Amended Complaint - Doc. 17- at ¶ 3).   At some unspecified time in 2006, while Hancock was being held as a pretrial detainee at the Perry County Jail on charges of capital murder, he alleges that he fell and injured himself.  (*Id*. at ¶ 8).  Plaintiff was subsequently moved to the Perry County Detention Center. (*Id*. at ¶ 9).

2.    On January 6, 2007, Hancock was taken from the Perry County Detention

Center to the emergency room at Brian D. Whitfield Memorial Hospital ("Whitfield Memorial") in Demopolis, Alabama due to his continuing complaints about his previous injury. (*Id*. at ¶ 11). While at Whitfield Memorial, Hancock alleges that he asked the intake nurse to inform his wife and attorney where he had been taken but was refused on "orders defendant Hood as Sheriff of Perry County." (*Id*. at ¶ 13). This is essentially the sole basis for Hancock's claims against Sheriff Hood.

3.    Hancock also alleges that he requested the prison doctor to inform his wife of his whereabouts but was told that prison policy prohibited such communication or knowledge about his whereabouts. (*Id*. at ¶ 14). In contrast to his contention that he was held incommunicado on orders of Sheriff Hood, Hancock later contended that his medical records contained entries indicating that "he would be allowed no telephone calls and no visitors and that such instructions were given by defendant Buford as the Assistant Warden of the detention center." (*Id*. at ¶ 23). Hancock also acknowledged that the "policy to hold plaintiff incommunicado" was the policy of the Perry County Detention Center and that Sheriff Hood merely "plac[ed] plaintiff in the detention center with knowledge of its policy to hold plaintiff incommunicado."[4] (*Id*. at ¶ 42).

_____

[4] In addition to Hancock's inconsistency regarding the source of the orders disallowing visitors and phone calls, the undersigned notes that Hancock filed a copy of his Claim to the Alabama Board of Adjustments in which he alleges that his attorney was aware of his transfer to Whitfield Memorial. Hancock specifically alleges that "[o]n January 6, 2007 a guard at the private prison [Perry County Detention Center] interrupted Claimant's conference with one of the undersigned attorney [either Bruce Boynton or William Powers, III] to inform the two that Claimant was to be taken to Bryan W. Whitfield Memorial Hospital at 105 Highway 80 East, Demopolis, Alabama 36732-3505 for an examination of his injury." (Doc. 21-2 at p. 18, ¶ 7). Although the Court, on July 2, 2009 (doc. 31) , denied plaintiff's motion of June 25, 2009 (doc.

4.      Buford confirms that he "complied with and enforced the Perry County Correctional Center policies and orders as commanded."  Buford's Opposition Brief (doc. 61) at 3.  One of those policies was that "Plaintiff was not allowed to have any visitors or contact with anyone other than the guards and medical staff during his treatments at Whitfield Memorial and DCH  [Druid City Hospital]."  *Id*. at 2.   Although Hancock contends that his inability to contact his wife and/or attorney somehow prevented him from seeking a second opinion regarding the surgery at issue and from making an informed consent about same, there is no allegation in his complaint that it was unreasonable for an inmate being held on capital murder charges to be continuously and closely guarded at all times and prohibited from both making telephone calls wherein he could disclose his public location and having any visitors.

5.      Hancock was in custody as a pre-trial detainee and not free to leave during the time that he received the medical treatment described in the complaint.  (Third Amended Complaint - Doc. 17 - at ¶ 16).  Hancock asserts that, had he been allowed to contact his wife, who was a registered nurse, she would have recommended that he obtain a second opinion before he underwent any surgical procedure.  (*Id*. at ¶¶ 17-19).

6.      Hancock remained at Whitfield Memorial for ten days and then was transferred to Druid City Hospital ("DCH") in Tuscaloosa, Alabama, when it was

_____

27) to amend his complaint by attaching documents which included his Claim to the Alabama Board of Adjustments because it was then irrelevant, the documents were not stricken and thus remain part of the record.

determined that he would benefit from an orthopaedic specialist. (*Id*. at ¶ 20). Prior to his transfer to DCH, Dr. Claytor had no involvement with Hancock or his medical treatment. Hancock's allegations against Dr. Claytor all relate to care received at DCH in Tuscaloosa, Alabama. In addition, Hancock has not alleged that Buford was ever present at either Whitfield Memorial or DCH during Plaintiff's treatments in January 2007.

7.      Once at DCH, Dr. Claytor diagnosed Hancock with spinal stenosis and performed surgery on his back. Hancock admits that he spoke with Dr. Claytor about the nature of the operation he was to receive and that he signed a consent form for the operation. (*Id*. at ¶ 26). Hancock thus acknowledges that he gave his consent for the surgery performed but alleges that it was not informed consent because he was not allowed to converse with his wife concerning the "full range of possible effects of the operation" including the possibility of bone displacement. (*Id*.) Hancock also claims that his consent was not informed because he was allegedly unaware of the possibility of obtaining a second opinion at his own cost. (*Id*.)

8.      During his stay in Tuscaloosa, Hancock alleges that he frequently asked to be allowed to contact his wife and attorneys but was denied by the hospital staff. (*Id*. at ¶ 22). As stated above, Hancock alleges that there were numerous entries in his medical records which indicated that he would be allowed no telephone calls and no visitors on instructions by Tommy Buford as Assistant Warden of the Perry County Detention Center. (*Id*. at ¶ 23). In addition, Hancock alleges that a guard from the detention center remained in his room at all times. (*Id*. at ¶ 30). There is no allegation in the complaint

that, during the relevant time period, any direct contact ever occurred between Hancock and Buford.

9.    Dr. Claytor diagnosed Hancock with stenosis of the upper spine and replaced C3 and C4 vertebra with those of a cadaver.  (*Id*. at ¶ 31).   Hancock contends that, as a direct and proximate result of the operation, he received a displaced collarbone which causes him to experience pains in his back, shoulder and neck.  (*Id*. at ¶¶ 36 - 37).  Hancock does not allege that Dr. Claytor performed the surgery in an improper manner, but simply that he was not told about "the possibilities of his collarbone bring [sic] displaced as a result of the operation." (*Id*. at ¶ 34).

10.    Hancock does not state in his Complaint how long he remained at DCH in Tuscaloosa, Alabama, but does allege in his Claim to the Alabama Board of Adjustments that after his return to the **"private prison,"** plaintiff's prior description of the Perry County Detention Center, "the prison nurse would neither timely administer the [pain] medication nor tell him of the hours when he was supposed to receive same" and he "was placed in continuous 'lockdown' for more than a year." *See* Doc. 21-2 at pp.20-21, 23-24, ¶¶ 18, 26 and 33 (emphasis added).  Buford confirms that Hancock "was released from DCH and returned to the Perry County Correctional Center on January 20, 2007." (Buford's Opposition Brief -Doc. 61- at 2).  Buford also advises that, "[o]n August 8, 2007, Plaintiff was transferred back to the Perry County Jail."  (*Id*. at 4).  Sheriff Hood confirms that "[o]n August 8, 2007, the Plaintiff was returned to the Perry County Jail prior to his transfer into the custody of the [Alabama] Department of Corrections on

August 24, 2007.  (Hood Brief- Doc. 40 - at 2).  Hancock is now a prisoner at Limestone

Correctional Facility which is located in North Alabama near Hunstville.

B.    Standard of Review.

Prior to Bell Atlantic v. Twombly, 550 U.S. 544 (2007), a court could only dismiss

a complaint "if it is was clear that no relief could be granted under any set of facts that

could be proved consistent with the allegations," language set forth in Conley v. Gibson,

355 U.S. 41, 45-46 (1957).  This language as it relates to the Rule 12(b)(6) standard was

expressly rejected in Twombly wherein the Supreme Court set forth the following

standard regarding a court's determination of the sufficiency of pleading such as is in

issue in this case:

> Federal Rule of Civil Procedure 8(a)(2) requires only " a short and plain
> statement of the claim showing that the pleader is entitled to relief," in order
> to "give the defendant fair notice of what the ... claim is and the grounds
> upon which it rests," Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2
> L.Ed.2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion
> to dismiss does not need detailed factual allegations, [citation omitted] a
> plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief"
> requires more than labels and conclusions, and a formulaic recitation of the
> elements of a cause of action will not do [citation omitted]. Factual
> allegations must be enough to raise a right to relief above the speculative
> level.

550 U.S. at 555.  The Supreme Court emphasized, however, that "we do not require

heightened fact pleading of specifics, but only enough facts to state a claim to relief that

is plausible on its face."  550 U.S. at 570.  The Supreme Court recently reinforced the

Twombly standard in Ashcroft v. Iqbal, – U.S. – , 129 S.Ct. 1937, 1949-50 (2009).  The

Court reiterated that a claim is insufficiently pled if it offers only "'labels and

conclusions'" or "'a formulaic recitation of the elements of a cause of action'."  Iqbal,

129 S.Ct. at 1949, *quoting* Twombly, 550 U.S. at 557.  The Iqbal Court explained:

> Two working principles underlie our decision in Twombly. First, the tenet
> that a court must accept as true all of the allegations contained in a
> complaint is inapplicable to legal conclusions. Threadbare recitals of the
> elements of a cause of action, supported by mere conclusory statements, do
> not suffice. . . . Rule 8 marks a notable and generous departure from the
> hyper-technical, code-pleading regime of a prior era, but it does not unlock
> the doors of discovery for a plaintiff armed with nothing more than
> conclusions. Second, only a complaint that states a plausible claim for relief
> survives a motion to dismiss. Determining whether a complaint states a
> plausible claim for relief will, as the Court of Appeals observed, be a
> context-specific task that requires the reviewing court to draw on its judicial
> experience and common sense. But where the well-pleaded facts do not
> permit the court to infer more than the mere possibility of misconduct, the
> complaint has alleged-but it has not "show[n]"-"that the pleader is entitled
> to relief."

Iqbal, 129 S.Ct. at 1949-50 (citation and internal punctuation omitted).  *See also*, Phillips

v. County of Allegheny, 515 F.3d 224, 233 (3rd Cir. 2008)("After Twombly, it is no

longer sufficient to allege mere elements of a cause of action; instead 'a complaint must

allege facts suggestive of [the proscribed] conduct'."), *quoting* Twombly, 550 U.S. at

553, n. 8.  *See also*, Sinaltrainal v. Coca-Cola Co., 2009 WL 2431463 (11th Cir. Aug. 11,

2009)("The mere possibility the defendant acted unlawfully is insufficient to survive a

motion to dismiss [*citing* Iqbal, 129 S.Ct. at 1949] [and] [t]he well-pled allegations must

nudge the claim 'across the line from conceivable to plausible'" [*quoting* Twombly, 550

U.S. at 570]").

It is also important to note that "[a] complaint may not be dismissed merely

because it appears unlikely that the plaintiff can prove those facts or will ultimately

prevail on the merits." McTernan v. City of York, Pennsylvania, 564 F.3d 636, 646 (3rd Cir. 2009), quoting, Phillips, 515 F.3d at 231, in turn quoting, Twombly, 550 U.S. at 553, n. 8. The Supreme Court's Twombly formulation of the pleading standard "'does not impose a probability requirement at the pleading stage,'" but instead "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' of the necessary element." Id., quoting Phillips, 515 F.3d at 234, in turn quoting, Twombly, 550 U.S. at 556. See also, Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)(noting that the language of § 1915(e)(2)(B)(ii) tracks the language of Fed.R.Civ.P. 12(b)(6)).

     C.    Motion to Dismiss Dr. Claytor.

     To the extent Dr. Claytor seeks to have this action dismissed for improper venue, it is recommended that the motion be denied. The propriety of venue in this case is not determined by reference to the Alabama Medical Liability Act which relates solely to the state law claim asserted against Dr. Claytor in Count Five of Plaintiff's Third Amended Complaint. Rather, it is determined by the federal constitutional claims asserted against all the defendants in the remaining counts of the complaint and the Federal Rules of Civil Procedure. Hollis v. Florida State University, 259 F.3d 1295, 1299 (11th Cir. 2001), citing Stewart Org., Inc. v. Ricoh Corp., 810 F.2d 1066, 1068 (11th Cir. 1987) (en banc) ("Venue is a matter of federal procedure . . ."), aff'd on other grounds, 487 U.S. 22 (1988). It is undisputed that the injury sustained by the Plaintiff, which ultimately led to his surgery, occurred while he was housed at the Perry County Jail. It is further undisputed that his continued complaints, which led to his hospitalization, occurred while

he was housed at the Perry County Detention Center. Both facilities are located in Perry County, Alabama which is within the jurisdiction of this Court. (Third Amended Complaint - Doc. 17- at ¶ 8, 11-20). Accordingly, venue is proper in this Court.

In Counts One and Two of the Third Amended Complaint, Plaintiff asserts that his uninformed consent to the surgery performed by Dr. Claytor amounts to an assault and battery that deprived him of his constitutional right to be free of such an assault and battery, in violation of the due process clause of the Fourteenth Amendment to the United States Constitution. (Third Amended Complaint - Doc. 17- at ¶ 42). Plaintiff is correct that, as a pretrial detainee, any such claim would arise under the Fourteenth Amendment. "Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause." Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996). Such claims, however, require a showing of "deliberate indifference" to a substantial risk of serious harm. *Id*., *quoting*, Farmer v. Brennan, 511 U.S. 825, 834 (1994). Under the due process clause, the standard of culpability has both an objective and subjective component. Cottrell, 85 F.3d at 1491. In order to satisfy the objective component, the alleged mistreatment "must be, objectively, 'sufficiently serious' . . .[that it] must result in the denial of 'the minimal civilized measure of life's necessities'." Farmer, 511 U.S. at 834; Cottrell, 85 F.3d at 1491. If that objective component is satisfied, the claim will still fail unless the pretrial detainee satisfies the subjective component by showing a "sufficiently culpable state of mind." *Id*. A culpable state of mind is one which evinces "deliberate indifference" to the detainee's health or

14

safety.  *Id.* "It is 'the equivalent of recklessly disregarding' a substantial risk of serious harm to the inmate."  *Id.*

Hancock has failed to allege the existence of either component of his Fourteenth Amendment claim.  There is no allegation that Dr. Claytor did anything which resulted in the denial of any life necessity (the objective component) or that he was "deliberately indifferent" to Hancock's medical condition or its appropriate treatment.  There is no legal support for Hancock's contention that the surgery performed by Dr. Claytor amounted to an assault and battery simply because, in his own opinion, he was not fully informed.  Moreover, it is undisputed that Hancock consented to the surgery at issue in this case and he does not allege that the surgery was performed against his will.

Even if Hancock's constitutional claim could be said to arise under the Fourth Amendment, it would likewise fail.  The Fourth Amendment has been applied to claims involving an "intrusion into the human body."  *See* <u>Schmerber v. California</u>, 384 U.S. 757 (1966)(State compelled an individual suspected of drunken driving to undergo a blood test which was held not to violate the Fourth Amendment).  As stated previously, Hancock consented to the surgery at issue in this case and does not allege that he was compelled by anyone to undergo the surgery against his will.  According to the Supreme Court, it is the Fourth Amendment that  "protects expectations of privacy," also described as "the individual's legitimate expectations that in certain places and at certain times he has 'the right to be let alone - the most comprehensive of rights and the right most valued by civilized men'."  <u>Winston v. Lee</u>, 470 U.S. 753, 758 (1985), *citing* <u>Katz v.</u>

United States, 389 U.S. 347 (1967) and *quoting* Olmstead v. United States, 277 U.S. 438, 478 (1928). The Supreme Court, in Winston, applied the Schmerber principles to a case in which an injunction was sought to prevent the State from compelling an attempted robbery suspect to undergo surgery to remove a bullet, fired by the victim, from the suspect's body which would then be used as further evidence of the suspect's involvement in the robbery. It was held that "[t]he overriding function of the Fourth Amendment is to protect personal privacy and dignity against ***unwarranted*** intrusion by the State." Winston, 470 U.S. at 760, *quoting* Schmerber, 384 U.S. at 767 (emphasis added). The Supreme Court explained that "[t]he Fourth Amendment neither forbids nor permits all such intrusions [into the human body]; rather, the Amendment's 'proper function is to constrain, not against all intrusions as such, but against intrusions which are ***not justified in the circumstances***, or which are ***made in an improper manner***'." Winston, 470 U.S. at 760, *quoting* Schmerber, 384 U.S. at 768 (emphasis added). As applied to this case, there is no allegation that the surgery by Dr. Claytor was unwarranted or that it was not justified in light of Hancock's medical condition. Nor does Hancock allege that Dr. Claytor performed the surgery in an improper manner. Rather, Hancock simply alleges that he was not told about "the possibilities of his collarbone bring [sic] displaced as a result of the operation." (Third Amended Complaint- Doc. 17 - at ¶ 34).

To the extent Hancock asserts his claim under purely State law, the claim is also due to be dismissed. Under Alabama law, the lack of informed consent to surgery does not constitute a battery:

> "The battery theory should be reserved for those circumstances when a doctor performs an operation to which the patient has not consented. When the patient gives permission to perform one type of treatment and the doctor performs another, the requisite element of deliberate intent to deviate from the consent given is present. However, when the patient consents to certain treatment and the doctor performs that treatment but an undisclosed inherent complication with a low probability occurs, no intentional deviation from the consent given appears; rather, the doctor in obtaining consent may have failed to meet his due care duty to disclose pertinent information."

Cain v. Howorth, 877 So.2d 566, 580 (Ala. 2003), *quoting* Daum v. SpineCare Med. Group, Inc., 52 Cal.App.4th 1285, 1313, 61 Cal.Rptr.2d 260, 276 (1997). The Alabama Supreme Court drew a definitive distinction in Cain between "a total lack of consent for the contested act" for which a claim for battery could be maintained and "the lack of informed consent" for which a claim for battery may not be maintained. *Id*. It is, therefore, recommended that Hancock's claims for assault and battery against Dr. Claytor in Counts One and Two of his Third Amended Complaint be dismissed for failure to state a claim for which relief may be granted because he consented to the surgery.

In Count Three of his complaint, Plaintiff claims that being held incommunicado caused him to give an uninformed consent to the surgery performed by Dr. Claytor, which constituted an unreasonable seizure of his person in violation of the Fourth Amendment and the due process clause of the Fourteenth Amendment of the United States Constitution. (Third Amended Complaint - Doc. 17- at ¶ 46). For the reasons stated above, Hancock has failed to state a claim under the Fourth Amendment for which relief may be granted because he consented to the surgery and has not alleged that it was either

unwarranted or performed in an improper manner. In addition, there is no requirement that the consent given by the plaintiff must have been "knowing and intelligent" in order to avoid a claim of seizure in violation of the Fourth Amendment. The Supreme Court has held that "the knowing and intelligent waiver of constitutional rights" requirement "applie[s] only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial." Schriro v. Landrigan, 550 U.S. 465, 485 (2007) (emphasis added), *quoting* Schneckloth v. Bustamonte, 412 U.S. 218, 241 (1973), in which it was also held:

> There is a vast difference between those rights that protect a fair criminal trial and the rights guaranteed under the Fourth Amendment. Nothing, either in the purposes behind requiring a 'knowing' and 'intelligent' waiver of trial rights, or in the practical application of such a requirement suggests that it ought to be extended to the constitutional guarantee against unreasonable searches and seizures.
>
> ● ● ●
>
> The protections of the Fourth Amendment are of a wholly different order, and have nothing whatever to do with promoting the fair ascertainment of truth at a criminal trial.

412 U.S. at 241. The consent at issue in this case has nothing to do with the integrity of any trial involving the plaintiff. As stated above, it is undisputed that Plaintiff consented to the operation performed by Dr. Claytor. Plaintiff's *sole contention* is that such consent was uninformed. This alleged lack of informed consent, however, cannot support a claim of seizure in violation of plaintiff's rights under either the Fourth Amendment or the Fourteenth Amendment. It simply does not constitute a viable constitutional claim.

Consequently, plaintiff's claim against Dr. Claytor for unreasonable seizure in Count Three must be dismissed for failure to state a claim for which relief may be granted.

In Count Four of his complaint, Plaintiff alleges, under 42 U.S.C. § 1981, a conspiracy to deprive him of his federal civil rights without due process in violation of the Fourth and Fourteenth Amendments of the United States Constitution. (Third Amended Complaint - Doc. 17- at ¶ 48). Plaintiff specifically alleges that the agreement at issue was "to hold plaintiff incommunicado . . . [which] amounted to an unreasonable seizure." *Id.* Plaintiff has failed, however, to assert the existence of any contract or contractual relationship with the parties. Section 1981 provides, in pertinent part:

> (a)    Statement of equal rights
>
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory **to make and enforce contracts**, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.
>
> (b)    "Make and enforce contracts" defined
>
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981(a)(emphasis added). Plaintiff's claims are not based in any fashion on a contract or a contractual relationship between himself and any of the defendants and plaintiff has not alleged racial animus. *See* Olmstead v. L.C. ex rel.Zimring, 527 U.S. 581, 617 (1999)("42 U.S.C. § 1981 has been interpreted to forbid all racial discrimination

in the making of private and public contracts").  Section 1981 simply does not provide a

statutory basis for a claim of conspiracy to deprive a person of civil rights.   A claim for

conspiracy to interfere with civil rights and privileges is only cognizable under 42 U.S.C.

§ 1985, which requires that the following elements be alleged and proven:

> "(1) a conspiracy; (2) for the purpose of depriving, either directly or
> indirectly, any person or class of persons of the equal protection of
> the laws, or of equal privileges and immunities under the laws; and
> (3) an act in furtherance of the conspiracy; (4) whereby a person is
> either injured in his person or property or deprived of any right or
> privilege of a citizen of the United States."

Lucero v. Operation Rescue in Birmingham, 954 F.2d 624, 627 (11th Cir. 1992), *quoting*

United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott, 463 U.S.

825, 828-29 (1983).  The Eleventh Circuit further held that "the second element requires a

showing of 'some racial, or perhaps otherwise class-based, invidiously discriminatory

animus behind the conspirators' action'." *Id.* at 628, *quoting* Griffin v. Breckenridge, 403

U.S. 88, 102 (1971).  The complaint in this case contains no allegation that the plaintiff

was subjected to any class-based discrimination or that the defendants' actions were in

any way motivated by class-based discriminatory animus.  Even if Plaintiff had claimed

that he was discriminated against because of his status as a prisoner, the Eleventh Circuit

has held that prisoners do not belong to a protected class for § 1985 purposes.  Farese v.

Scherer, 342 F.3d 1223, 1229 (11th Cir. 2003)("[P]risoners are neither a class offered

special protection under the equal protection clause nor a class that Congress intended to

protect when it enacted § 1985(3).").  Hancock has not alleged that he was treated any

differently from any other inmate under similar circumstances.  Consequently, Hancock's

conspiracy claim in Count Four, whether brought under § 1981 or § 1985, must be

dismissed for failure to state a claim for which relief may be granted.

In Count Five, Hancock asserts a purely state law claim against Dr. Claytor arising

under the Alabama Medical Liabilities Act, Ala. Code § 6-5-484 (1975).  The substance

of this claim is that Dr. Claytor failed to read in Hancock's medical chart that he was

being held incommunicado and to discuss this matter with the Plaintiff which resulted in

an uninformed consent to the surgery which then resulted in injury.  There is no allegation

that Dr. Claytor performed the surgery improperly.  Because the undersigned

recommends that all Plaintiff's federal causes of action against Dr. Claytor be dismissed

for failure to state a claim and because this state law claim is asserted solely against Dr.

Claytor and not against either of the other two defendants, the undersigned recommends

that the Court decline to exercise supplemental jurisdiction over Count Five and dismiss

same without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

A district court's decision whether to exercise supplemental jurisdiction after

dismissing every claim over which it had original jurisdiction is purely discretionary.  28

U.S.C. §§ 1367(a) and (c); United Mine Workers of America v. Gibbs, 383 U.S. 715, 726

(1966)("[Pendant jurisdiction] need not be exercised in every case in which it is found to

exist [because] [i]t . . . is a doctrine of discretion, not of plaintiff's right [and] [i]ts

justification lies in considerations of judicial economy, convenience and fairness to

litigants; . . . [and] if the federal claims are dismissed before trial, even though not

insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). *See also* <u>Palmer v. Hospital Auth</u>., 22 F.3d 1559, 1569 (11th Cir.1994) ("The breadth of discretion afforded federal courts in these cases has been codified by section 1367(c)....[W]hile supplemental jurisdiction must be exercised in the absence of any of the four factors of subsection 1367(c), when one or more of these factors is present, the additional <u>Gibbs</u> considerations may, by their presence or absence, influence the court in its decision concerning the exercise of such discretion.").  The Supreme Court contrasted the "judicial economy" and "fairness" consideration set forth in <u>Gibbs</u> in a case in which a plaintiff has asserted a claim against one defendant with respect to which there is federal jurisdiction and joins a different defendant against whom only a state-law claim exists over which there is no independent basis for jurisdiction but the claims "derive from a common nucleus of operative fact."  The Supreme Court clearly intimated that it would be unfair to force a party to defend a purely state law claim in the federal case.  <u>Aldinger v. Howard</u>, 427 U.S. 1, 14-15 (1976)("The value of efficiency in the disposition of lawsuits by avoiding multiplicity may be readily conceded, but that is not the only consideration a federal court should take into account in assessing the presence or absence of jurisdiction. Especially is this true where, as here, the efficiency plaintiff seeks so avidly is available without question in the state courts.") *quoting* <u>Kenrose Mfg. Co. v. Fred Whitaker Co.</u>, 512 F.2d 890, 894 (4th Cir. 1972).   The state law medical negligence claim asserted here against Dr. Claytor, although arising from plaintiff's hospitalization and treatment arranged by one or more of the other two defendants, is a distinct and separate claim from

those existing at this juncture against the co-defendant's. Plaintiff may seek complete relief without question in the appropriate Alabama state court. Consequently, Count V should be dismissed without prejudice to allow plaintiff to litigate his claim in the state court.

In view of the above recommendation, Dr. Claytor's alternative motion to transfer this action to the United States District Court for the Northern District of Alabama should be denied.

D.    Motion to Dismiss Sheriff Hood.

(1)    Claims are barred by the applicable statute of limitations.

As stated above, the sole factual basis for Hancock's claims against Sheriff Hood is the allegation that he could not "inform his wife and attorney where he had been taken . . . because of orders from defendant Hood as Sheriff of Perry County." (Third Amended Complaint - Doc. 17 - at ¶ 13). The undersigned agrees that any order given by Sheriff Hood would necessarily have predated Hancock's admission to Bryan D. Whitfield Memorial Hospital's emergency room on January 6, 2007, by virtue of Hancock's own assertion that he had previously been "moved [from the Perry County Jail] to the Perry County Detention Center [which plaintiff describes as "a private prison"]."   (*Id.* at ¶¶ 5, 10-11, 13, and 48). Hancock's complaint was not filed until January 16, 2009. Even assuming that Hancock has raised a valid claim for relief, any federal or state law claim would be governed by the statute of limitations applicable to general personal injuries in the forum state. <u>Owens v. Okure</u>, 488 U.S. 235, 240-41 (1989)("Because '§ 1983 claims

are best characterized as personal injury actions,'. . . a State's personal injury statute of limitations should be applied to all § 1983 claims."). In Alabama, this statute of limitations is two (2) years. Ala. Code § 6-2-38 (2007); Dukes v. Smitherman, 32 F.3d 535, 537 (11th Cir. 1994)(Held that, in Alabama,"§ 1983 claims were subject to a two year limitations period."). Because Hancock's § 1983 claims against Sheriff Hood accrued prior to January 6, 2007, it is recommended that they be dismissed as barred under Alabama's two-year statute of limitations.

(2)    Sheriff Hood is entitled to qualified immunity.

In the alternative, claims against Sheriff Hood in his individual capacity are due to be dismissed because Sheriff Hood is clearly entitled to the qualified immunity he has asserted.[5]   "Public officials are entitled to qualified immunity so long as their discretionary actions do not violate clearly established statutory or constitutional rights." Autery v. Davis, 2009 WL 3792403, * 2 (11th Cir. Nov. 12, 2009).  "Qualified immunity is a privilege that provides 'an *immunity from suit* rather than a mere defense to liability.'" Townsend v. Jefferson County, 582 F.3d 1252, 1258 (2009)(emphasis in original).

Before addressing the Sheriff's immunity further, the undersigned must agree that

---

[5]Hancock did not assert any claims against Sheriff Hood in his official capacity, nor could he because Sheriff Hood has absolute immunity from all suits for damages based on his official acts.  McMillan v. Monroe County, Ala., 520 U.S. 781, 789  (1997) (acknowledging that " a sheriff [in Alabama] is absolutely immune from all suits for damages based on his official acts." because Alabama sheriffs, when executing their law enforcement duries, represent the State of Alabama, not their counties.).

Hancock's pleadings contain little more than conclusory allegations against Sheriff Hood that do not satisfy the heightened pleading requirements for § 1983 claims against public officials. As the Eleventh Circuit has made abundantly clear:

> In examining the factual allegations in the complaint, we must keep in mind the heightened pleading requirements for civil rights cases, especially those involving the defense of qualified immunity. GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir.1998). The complaint must allege the relevant facts "with some specificity." *Id.* "[M]ore than mere conclusory notice pleading is required.... [A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir.1984). *See also* Veney v. Hogan, 70 F.3d 917, 922 (6th Cir.1995) (holding that complaint must "include the specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity"). Moreover, in reviewing a motion to dismiss, we need only accept "well-pleaded facts" and "reasonable inferences drawn from those facts." Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir.1992). "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." Marsh v. Butler County, 268 F.3d 1014, 1036 n. 16 (11th Cir.2001). We must also keep in mind the fact that "[w]e generally accord ... official conduct a presumption of legitimacy." United States Dep't of State v. Ray, 502 U.S. 164, 179, [] (1991).

Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003). *See also* Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001)("[H]eightened specificity is required in civil rights actions against public officials who may be entitled to qualified immunity.").  Neither do Hancock's pleadings satisfy the Twombly requirement to allege "enough facts to state a claim to relief that is plausible on its face."  550 U.S. at 570.  The sole factual basis for Hancock's claims against Sheriff Hood is his contention that he asked an intake nurse in

the emergency room at Whitfield Memorial Hospital to inform his wife and attorney where he had been taken but was the nurse told Hancock "that this could not be done because of orders from defendant Hood as Sheriff of Perry County." (Third Amended Complaint - Doc 17- at ¶ 13). It is not only difficult to accept Hancock's premise that his inability to contact his wife and/or attorney somehow prevented him from seeking a second opinion regarding the surgery at issue and from making an informed consent about same, but the Sheriff's role in the matter is questionable in light of Hancock's conflicting allegations. For example, the contention that Sheriff Hood gave the order to hold Hancock incommunicado is inconsistent with his later contention that, prior to his hospitalization, he had been transferred from the Perry County Jail to the Perry County Detention Center, which he described as "a private prison." (*Id.* at ¶¶ 5 and 10).[6] It is also inconsistent with Hancock's contention that his medical records contained entries indicating that "he would be allowed no telephone calls and no visitors and that *such instructions were given by defendant Buford as the Assistant Warden of the detention center.*" (*Id.* at ¶ 23, emphasis added). Finally, it is inconsistent with Hancock's contention that the "policy to hold plaintiff incommunicado" was the policy of the Perry County Detention Center and that Sheriff Hood merely "plac[ed] plaintiff in the detention

---

[6]Although Hancock states that this "private prison" was "an instrumentality or agent of the defendants [sic] Hood," the complaint contains no factual allegations to support such a legal conclusion. Consequently, Hancock's claims against Sheriff Hood in his complaint "do not permit the court to infer more than the mere possibility of misconduct." Iqbal, *supra*,129 S.Ct. at 1950. Hancock has failed, therefore, to assert claims against Sheriff Hood with respect to any conduct alleged to have occurred after plaintiff's transfer from Perry County Jail to the Perry County Detention Center that are plausible on their face. *See* Twombly, *supra*, 550 U.S. at 570.

center with knowledge of its policy to hold plaintiff incommunicado." (*Id*. at ¶ 42). *See*

*e.g.* Campos v. I.N.S., 32 F.Supp 2d 1337, 1343 (S.D. Fla. 1988)("Courts must liberally

construe and accept as true allegations of fact in the complaint and inferences reasonably

deductible therefrom, but need not accept factual claims that are internally inconsistent,

facts which run counter to facts of which the court can take judicial notice, conclusory

allegations, unwarranted deductions, or mere legal conclusions asserted by a party.);

McMahon v. City of Riviera Beach, 2008 WL 4108051, * 3 (S.D. Fla. Aug 28,

2008)("[A] court is not required to 'accept factual claims that are internally

inconsistent'."). Because Hancock's contradictory factual allegations cannot be taken as

true, all that remains are his legal conclusions which alone cannot support a claim against

Sheriff Hood.

Even if the Court were to construe Hancock's complaint as conforming to the

requisite heightened pleading standards, Sheriff Hood is entitled to qualified immunity

with respect to Counts One and Three of plaintiff's Third Amended Complaint.[7] The

threshold question is: "Taken in the light most favorable to the party asserting the injury,

do the facts alleged show the [Sheriff's] conduct violated a constitutional right?" Saucier

---

[7]In Count Two of the Third Amended Complaint, Hancock asserts a claim for "Assault and Battery Under State Law" solely against Dr. Claytor. Hancock clearly recognized that it would have been inappropriate to assert such a claim against Sheriff Hood in view of his absolute immunity from such a claim. LeFrere v. Quezada, 582 F.3d 1260, 1265-66 (11th Cir. 2009)(Sheriffs and their Deputies, "as constitutional officers, have sovereign immunity under Alabama law because actions against them are viewed as actions against the State."); Ex parte Sumter County, 953 So.2d 1235, 1239 (Ala. 2006)("[S]heriffs and deputy sheriffs are executive officers of this State . . . [and] claims against sheriffs and deputy sheriffs are "barred by the absolute immunity of Article I, § 14, of the Alabama Constitution of 1901.").

v. Katz, 533 U.S. 194, 201 (2001), *citing* Siegert v. Gilley, 500 U.S. 226, 232 (1991).

Because the only claim against Sheriff Hood is for allegedly limiting the contact Hancock had, as a pretrial detainee being then held by the Perry County Detention Center on capital murder charges, with his wife and/or attorney while he was a patient in a public hospital, he has failed to allege facts sufficient to demonstrate that his constitutional rights were violated.  As an inmate, Hancock "[did] not have an absolute constitutional right to visitation or communication with free-world individuals," even if the Court were to construe Hancock's claims as arising under the First Amendment instead of the Fourth and Fourteenth Amendments as set forth in his complaint.  Wiley v. Glover, 2008 WL 4629924, * 17 (M.D. Ala. Sept. 30, 2008), *citing* Carballo-Sandoval v. Honstead, 35 F.3d 521, 525 (11th Cir. 1994); Evans v. Johnson, 808 F.2d 1427, 1428 (11th Cir. 1987).

"These privileges are subject to the discretion of correctional personnel and may be limited and/or revoked in the furtherance of legitimate penological objectives.  *Id.*, *citing* McCray v. Sullivan, 509 F.2d 1332, 1334 (5th Cir.)("Visitation privileges are a matter subject to the discretion of prison officials."), *cert. denied*, 423 U.S. 859 (1975); Carballo-Sandoval, 35 F.3d at 525 ("[C]oncerns that former prison employees visiting inmates may pose a threat to security because of their knowledge of security procedures" held to "constitute[] a legitimate penological objective.").  Hancock has failed to assert any factual basis pursuant to which it could be said that the policy which prevented his communication with his wife and/or attorney while he was hospitalized did not serve a legitimate penological objective.

For the reasons stated above with respect to the claims asserted against Dr. Claytor in Counts One and Three of the Third Amended Complaint, the surgery performed on Hancock did not constitute either an assault and battery on his person, a seizure within the meaning of the Fourth Amendment or any other constitutional violation. This is so because Hancock consented to the surgery. The Fourth Amendment merely constrains against "intrusions [into the human body] which are not justified in the circumstances, or which are made in an improper manner." Winston, *supra*, 470 U.S. at 760. And there exists no legal support for the proposition that a constitutional violation occurs unless Hancock's consent for this surgery was fully informed. As stated above, a "knowing and intelligent waiver of constitutional rights" applies only to those rights which the Constitution guarantees to a criminal defendant *in order to preserve a fair trial***."** Schriro, *supra*, 550 U.S. at 485 (emphasis added). The "knowing and intelligent" requirement has not been extended to Fourth Amendment rights that do not promote "the fair ascertainment of truth at a criminal trial." Schneckloth, *supra*, 412 U.S. at 241. The rights asserted in this case by Hancock do not involve the integrity of any criminal trial. Hancock's surgery was prescribed by his treating physician, an "orthopedic specialist" according to the plaintiff, and performed with plaintiff's consent. There is no contention that it was an unwarranted procedure. There is also no contention that any defendant was deliberately indifferent to Hancock's serious medical condition such that it would implicate the Fourteenth Amendment. Hancock's only complaint is that he was not advised prior to surgery that the surgery could result in a displaced collarbone.

In addition, the law is clear that Hancock does not have a right to a *specific* kind of treatment. *Cf.* City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 245 (1983)("[T]he injured [pretrial] detainee's constitutional right is to receive the needed medical treatment; how [a municipality] obtains such treatment is not a federal constitutional question.").  Nor should either this Court or Sheriff Hood be required to substitute their medically untrained judgment for the professional judgment of the medical health professionals who treated Hancock. See e.g. Williams v. Limestone County, Ala., 198 Fed.Appx. 893, 897 (11th Cir. 2006)("[S]upervisory officials [of the jail, including the Sheriff] are entitled to rely on medical judgments made by medical professionals responsible for prisoner care."); Meloy v. Bachmeier, 302 F.3d 845, 847 (8th Cir. 2002)("Prison officials cannot substitute their judgment for a medical professional's prescription."), *citing* Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir.2000)(same);  Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims.").  *See also* Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)("[I]f a doctor follows established medical procedures and actually treats a prison inmate, he has satisfied his obligation under the Eighth Amendment [and] [s]imple medical malpractice certainly does not rise to the level of a constitutional violation."), *citing* Estelle v. Gamble, 429 U.S. 97, 105-06  (1976)("[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an

unnecessary and wanton infliction of pain" or to . . . state a valid claim of medical mistreatment under the Eighth Amendment."); <u>Hamm v. DeKalb County</u>, 774 F.2d 1567, 1575 (11th Cir. 1985)("Th[e] evidence shows that [the inmate] received significant medical care while at the jail [and,] [a]lthough [he] may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference."), *cert. denied*, 475 U.S. 1096 (1986).   As applied to the case at bar, Hancock received the medical treatment prescribed by his treating physician and to which he gave his consent. Sheriff Hood is entitled to qualified immunity because Hancock has failed to alleged a viable claim that any clearly established and federally protected rights were violated by this defendant.  Consequently, Counts One and Three must be dismissed for failure to state a claim against Sheriff Hood for which relief may be granted.

In Count Four, Hancock asserts his final claim against Sheriff Hood, namely a claim of a conspiracy to deprive him of his federal civil rights.  For the reasons set forth above, Hancock has failed to assert a viable claim for any deprivation of his federal civil rights.  Hancock's claims are not cognizable under § 1981 because this statute does not provide a basis for such a conspiracy claim and because plaintiff's claims do not involve a contract or contractual relationship.  To the extent that Hancock intended to invoke 42 U.S.C. § 1985, the complaint in this case contains no allegation that the plaintiff was subjected to any class-based discrimination or that the defendants' actions were in any way motivated by class-based discriminatory animus.  Consequently, Count Four, the sole remaining claim against Sheriff Hood, must also be dismissed for failure to state a claim

31

for which relief may be granted.

D.    Motion to Dismiss Tommy Buford.

(1)    Failure to Exhaust Administrative Remedies.

The complaint against Buford is due to be dismissed because Hancock has failed

to exhaust his administrative remedies.  The Prison Litigation Reform Act ("PLRA")

specifically provides:

> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  As applied to this statute, a "prisoner" is "any person incarcerated

or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated

deliquent for, violations of criminal law or the terms and conditions of parole, probation,

pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).  The Eleventh Circuit

has described seven policy reasons for favoring the PLRA exhaustion requirement:

> (1) to avoid premature interruption of the administrative process; (2)
> to let the agency develop the necessary factual background upon
> which decisions should be based; (3) to permit the agency to exercise
> its discretion or apply its expertise; (4) to improve the efficiency of
> the administrative process; (5) to conserve scarce judicial resources,
> since the complaining party may be successful in vindicating rights
> in the administrative process and the courts may never have to
> intervene; (6) to give the agency a chance to discover and correct its
> own errors; and (7) to avoid the possibility that frequent and
> deliberate flouting of the administrative processes could weaken the
> effectiveness of an agency by encouraging people to ignore its
> procedures.

Johnson v. Meadows, 418 F.3d 1152, 1156 (11ᵗʰ Cir. 2005), *quoting* Alexander v. Hawk,

159 F.3d 1321, 1327 (11th Cir.1998). Based on these policy considerations, the Court

held in <u>Meadows</u> that the PLRA exhaustion requirement necessarily contains a procedural

default component which requires the prisoner to "meet the deadlines or the good cause

standard of the [State's] administrative grievance procedures before filing a federal

claim." 418 F.3d at 1159. *See also* <u>Brown v. Sikes</u>, 212 F.3d 1205, 1207 (11th Cir. 2000)

("[W]hen a state provides a grievance procedure for its prisoners, . . . an inmate alleging

harm suffered from prison conditions must file a grievance and exhaust the remedies

available under that procedure before pursuing a § 1983 lawsuit); <u>McNeal v. Hughes</u>,

2009 WL 3834051 * 4 (M.D. Ala. Nov.16, 2009) (case dismissed under 42 U.S.C.

§1997e(a) because inmate failed to exhaust his remedies under the jail's grievance

procedure for inmate complaints). *See also*, <u>Carter v. Jones</u>, 2009 WL 3757560 * 5

(M.D. Ala. Nov. 9. 2009)(case dismissed with prejudice because plaintiff failed to file a

grievance while an inmate at the Lee County Detention Center and such administrative

remedy was no longer available after plaintiff's transfer to a prison in the Alabama prison

system).

As applied to the case at bar, Hancock acknowledged the necessity of exhausting

his administrative remedies by specifically alleging that he had done so "by submitting a

claim that embodies the substance of this complaint both to Defendant Hood and the

Alabama Board of Adjustment."[8] (Third Amended Complaint (Doc. 17) at ¶ 3.) There is,

---

[8]Sheriff Hood similarly asserted that the complaint against him should be dismissed
under the PLRA for failure to exhaust administrative remedies. However, Sheriff Hood relied

however, no allegation that he filed a grievance or any other complaint against Buford while being held in the Perry County Detention Center and, according to Hancock, he "is presently an inmate at the Limestone Correctional Facility, in Madison County, Alabama." *Id.* Consequently, as was true in <u>Carter</u>, *supra*, the administrative remedy provided by the Perry County Detention Center is no longer available to Hancock and dismissal with prejudice is appropriate.[9] It is therefore recommended that all the claims against Buford be dismissed without prejudice for failure to exhaust administrative remedies as required by the PLRA.

(2)    <u>Alternative Grounds to Dismiss Tommy Buford</u>.

For the reasons stated above with respect to Sheriff Hood and Dr. Claytor, Hancock's claims against Buford in Counts One and Three of the Third Amended Complaint[10] are due to be dismissed for failure to state a claim upon which relief may be granted. The surgery performed on Hancock did not constitute either an assault and

---

upon documents other than the complaint which would require conversion of the motion to dismiss into the alternative motion for summary judgment. The undersigned concludes that it is unnecessary to reach that issue.

[9]Limestone Correctional Facility, unlike the Perry County Detention Center, is a state prison facility managed by the Alabama Department Corrections. The Perry County Detention Center is not managed by any State agency.

[10]*See* n. 6, *supra.* Although Buford discusses the applicable Alabama law and asserts that his lack of contact with Hancock insulates him from any claim of assault and battery, Count Two of Hancock's Third Amended Complaint contains only a claim against Dr. Claytor for "Assault and Battery Under State Law." (Third Amended Complaint - Doc. 17- at ¶ 46). The only reference in Count Two to "all defendants" is in the "WHEREFORE" clause wherein Hancock seeks to incorporate the specific items of relief which he set forth only in Count One.

battery on his person, a seizure within the meaning of the Fourth Amendment or any other constitutional violation. This is so because Hancock consented to the surgery and there exists no legal support for the proposition that a constitutional violation occurs unless Hancock's consent for this surgery was fully informed. As stated above, a "knowing and intelligent waiver of constitutional rights" applies only to those rights which the Constitution guarantees to a criminal defendant *in order to preserve a fair trial."* <u>Schriro</u>, *supra*, 550 U.S. at 485 (emphasis added). The rights asserted in this case by Hancock do not involve the integrity of any criminal trial. Hancock's surgery was prescribed by his treating physician and performed with plaintiff's consent. There is no contention that it was an unwarranted procedure. There is also no contention that any defendant was deliberately indifferent to Hancock's serious medical condition so as to implicate the Fourteenth Amendment. Hancock's only complaint is that he was not advised prior to surgery that the surgery could result in a displaced collarbone. As was true with respect to Sheriff Hood, it is certainly not for this Court or Buford to substitute their medically untrained judgment for the professional judgment of the medical health professionals who treated Hancock.

In addition, because the only claim against Buford is for allegedly limiting the contact Hancock had, as a pretrial detainee being then held by the Perry County Detention Center on capital murder charges, with his wife and/or attorney while he was a patient in a public hospital, Hancock has failed to allege facts sufficient to demonstrate that his constitutional rights were violated. Hancock has failed to assert any factual basis

35

pursuant to which it could be said that the policy which prevented his communication with his wife and/or attorney while he was hospitalized did not serve a legitimate penological objective.

Similarly, the conspiracy claim in Count Four as asserted against Buford must be dismissed for failure to state a claim for which relief may be granted. Hancock's conspiracy claims are not based in any fashion on a contract or a contractual relationship between himself and any of the defendants and plaintiff has not alleged racial animus and § 1981 simply does not provide a statutory basis for a claim of conspiracy to deprive a person of civil rights. Although a claim for conspiracy to interfere with civil rights and privileges would be cognizable under 42 U.S.C. § 1985, the complaint in this case contains no allegation that the plaintiff was subjected to any class-based discrimination or that the defendants' actions were in any way motivated by class-based discriminatory animus. It is also clear that prisoners do not belong to a protected class for § 1985 purposes. Nor has Hancock alleged that he was treated differently from any other inmate under similar circumstances. Consequently, Hancock's conspiracy claim in Count Four whether under § 1981 or § 1985 must be dismissed for failure to state a claim for which relief may be granted.

Finally, as was true with respect to Sheriff Hood, Hancock asserts no claim against Buford in Count Five.

## CONCLUSION

For the reasons stated above, it is recommended that: (1) the motion to dismiss

filed by Dr. Brian S. Claytor (doc.34) be **granted** but that Dr. Claytor's alternative motion to transfer be **denied**; (2) the motion to dismiss filed by Perry County Sheriff James Hood (doc. 39) be granted and those claims dismissed with prejudice and (3) the motion to dismiss filed by Defendant Tommy Buford (doc. 60) be **granted** and those claims be dismissed with prejudice**.**  It is further recommended that this action be dismissed without prejudice as to Count Five of the Third Amended Complaint, wherein plaintiff asserts a claim against Dr. Claytor under the Alabama Medical Liabilities Act, Ala. Code § 6-5-484 (1975).

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**Done** this 25th day of January 2010.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL
### RIGHTS AND RESPONSIBILITIES FOLLOWING
### RECOMMENDATION
### AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.     **Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)©; Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within fourteen days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.     **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

     **Done** this 25th day of January 2010.

                         /s/ Katherine P. Nelson_____
                         UNITED STATES MAGISTRATE JUDGE